# United States District Court
## Middle District of Tennessee

---

**Office of the Clerk**
**800 United States Courthouse**
**Nashville, Tennessee 37203**
**(615) 736-7396**

Katheryn M. Beasley
Deputy Clerk, Criminal Cases

*E-Mail: Katheryn_Beasley@tnmd.uscourts.gov*
*Web Site: www.tnmd.uscourts.gov*

F I L E D
2-25-08
FEB 2 5 2008 CM

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

February 20, 2008

United States District Court Clerk
Everett McKinley Dirksen United States Courthouse, 20th Floor
219 South Dearborn Street
Chicago, IL 60604

> TRANSMISSION OF RULE 5 DOCUMENTS
> USA v. JOHN R. BARNER
> Northern District of Illinois Case No.:      08CR0080 ✓
> Middle District of Tennessee Magistrate Case No.:  3:08-mj-4009

Dear Clerk:

Enclosed are certified copies of the Rule 5 documents for the above-referenced case.

Yours truly,

*/s/ Katheryn M. Beasley*

Katheryn M. Beasley

Enclosures

cc:         U.S. Marshal Service
            U.S. Probation Office

# U.S. District Court
## Middle District of Tennessee (Nashville)
## CRIMINAL DOCKET FOR CASE #: 3:08-mj-04009 All Defendants
### Internal Use Only

Case title: USA v. Barner                                   Date Filed: 02/05/2008
Other court case number: 08CR0080 Northern District of Illinois     Date Terminated: 02/19/2008

Assigned to: Magistrate Judge John S. Bryant

### Defendant

**John R. Barner** (1)                          represented by **Carl Douglas Thoresen**
*RULE 5*                                          Federal Public Defender's Office
*TERMINATED: 02/19/2008*                          810 Broadway
                                                  Suite 200
                                                  Nashville, TN 37203
                                                  (615) 736-5047
                                                  Email: doug_thoresen@fd.org
                                                  *LEAD ATTORNEY*
                                                  *ATTORNEY TO BE NOTICED*
                                                  *Designation: Public Defender or Community*
                                                  *Defender Appointment*

**Pending Counts**                                **Disposition**
None

**Highest Offense Level (Opening)**
None

**Terminated Counts**                             **Disposition**
None

**Highest Offense Level (Terminated)**
None

**Complaints**                                    **Disposition**
None

### Plaintiff

**USA**                                           represented by **S. Carran Daughtrey**
                                                  Office of the United States Attorney
                                                  110 Ninth Avenue, S
                                                  Suite A961
                                                  Nashville, TN 37203-3870
                                                  (615) 736-5151
                                                  Fax: (615) 736-5323
                                                  Email: carrie.daughtrey@usdoj.gov
                                                  *LEAD ATTORNEY*
                                                  *ATTORNEY TO BE NOTICED*

ATTEST AND CERTIFY
**A TRUE COPY**
Clerk
U. S. District Court
Middle District of Tennessee

By: *Kathleen Beasley*
Deputy Clerk

| Date Filed | # | Docket Text |
|---|---|---|
| 02/05/2008 | ❶1 | Out-of-District Arrest Warrant Returned Executed on 2/5/08 as to John R. Barner. (kb) (Entered: 02/07/2008) |
| 02/05/2008 | ❶2 | MOTION for Detention by USA as to John R. Barner. (kb) (Entered: 02/07/2008) |
| 02/05/2008 | ❶3 | Minute Entry for proceedings held before Judge John S. Bryant :Initial Appearance in Rule 5(c)(3) Proceedings as to John R. Barner held on 2/5/2008. Deft appeared with appointed counsel, Doug Thoresen. Detention hearing set for 2/8/08 11:00 AM before Judge Knowles. Deft waived Rule 5 hearings in this district. (kb) (Entered: 02/07/2008) |
| 02/05/2008 | ❶4 | ACKNOWLEDGMENT by John R. Barner of receipt and review of Notice and Explanation of Rights. (kb) (Entered: 02/07/2008) |
| 02/05/2008 | ❶5 | CJA 23 Financial Affidavit by John R. Barner (kb) (Entered: 02/07/2008) |
| 02/05/2008 | ❶6 | ORDER APPOINTING FEDERAL PUBLIC DEFENDER as to John R. Barner. Signed by Judge John S. Bryant on 2/5/08. (kb) (Entered: 02/07/2008) |
| 02/05/2008 | ❶7 | WAIVER of Rule 5(c)(3) Hearing by John R. Barner (kb) (Entered: 02/07/2008) |
| 02/05/2008 | ❶8 | ORDER of Temporary Detention as to John R. Barner: Detention Hearing set for 2/8/2008 11:00 AM before Magistrate Judge E. Clifton Knowles. Signed by Judge John S. Bryant on 2/5/08. (kb) (Entered: 02/07/2008) |
| 02/08/2008 | ❶9 | Minute Entry for proceedings held before Judge Juliet E. Griffin :Detention Hearing as to John R. Barner held on 2/8/2008. Deft detained. Terminating 2 MOTION for Detention filed by USA. (Tape #G2008-27, 28.) (kb) (Entered: 02/11/2008) |
| 02/08/2008 | ❶10 | WITNESS/EXHIBIT LIST prepared by Deputy Clerk from detention hearing. (kb) (Entered: 02/11/2008) |
| 02/11/2008 | ❶11 | MOTION by Govt to unseal search warrants and complaint and warrantas to John R. Barner. (as) (Entered: 02/12/2008) |
| 02/12/2008 | ❶12 | ORDER granting 11 Motion by Govt to Unseal as to John R. Barner. Signed by Judge Juliet E. Griffin on 2/11/08. (as) (Entered: 02/12/2008) |
| 02/19/2008 | ❶13 | ORDER OF DETENTION as to John R. Barner. Signed by Judge Juliet E. Griffin on 2/19/08. (kb) (Entered: 02/19/2008) |
| 02/19/2008 | ❶14 | ORDER HOLDING DEFENDANT TO ANSWER IN NORTHERN DISTRICT OF ILLINOIS as to John R. Barner. Signed by Judge Juliet E. Griffin on 2/19/08. (kb) (Entered: 02/20/2008) |
| 02/19/2008 | ❶15 | COMMITMENT TO ANOTHER DISTRICT as to John R. Barner. Defendant committed to District of Northern District of Illinois. Signed by Judge Juliet E. Griffin on 2/19/08. (kb) (Entered: 02/20/2008) |
| 02/20/2008 | ❶16 | Rule 5(c)(3) Documents Transmitted as to John R. Barner to Northern District of Illinois. (kb) (Entered: 02/20/2008) |

AO 94  (Rev. 8/97) Commitment to Another District

# UNITED STATES DISTRICT COURT

_____MIDDLE_____  District of  _____TENNESSEE_____

UNITED STATES OF AMERICA
**V.**

JOHN BARNER

## COMMITMENT TO ANOTHER DISTRICT

| DOCKET NUMBER | | MAGISTRATE JUDGE CASE NUMBER | |
|---|---|---|---|
| District of Arrest | District of Offense | District of Arrest | District of Offense |
| | | 08-mj-4009 | 08-CR-0080 |

**CHARGES AGAINST THE DEFENDANT ARE BASED UPON AN**

☐ Indictment    ☐ Information    X Complaint    ☐ Other (specify)

charging a violation of    18    U.S.C. §  2423(b)

**ATTEST AND CERTIFY
A TRUE COPY**
Clerk

**DISTRICT OF OFFENSE**
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

U. S. District Court
Middle District of Tennessee

**DESCRIPTION OF CHARGES:**

By: Kathleen Beasley

Deputy Clerk

travel in interstate commerce from the State of Tennessee to the Sate of Illinois for the purpose of engaging in illicit sexual conduct

**CURRENT BOND STATUS:**

☐ Bail fixed at                        and conditions were not met
X Government moved for detention and defendant detained after hearing in District of Arrest
☐ Government moved for detention and defendant detained pending detention hearing in District of Offense
☐ Other (specify)

**Representation:**    ☐ Retained Own Counsel    X Federal Defender Organization    ☐ CJA Attorney    ☐ None

**Interpreter Required?**    X No    ☐ Yes    Language:

**DISTRICT OF** TENNESSEE, MIDDLE

TO: THE UNITED STATES MARSHAL

    You are hereby commanded to take custody of the above named defendant and to transport that
defendant with a certified copy of this commitment forthwith to the district of offense as specified above
and there deliver the defendant to the United States Marshal for that District or to some other officer
authorized to receive the defendant.

February 19, 2008
Date

United States Judge or Magistrate Judge

**RETURN**

This commitment was received and executed as follows:

| DATE COMMITMENT ORDER RECEIVED | PLACE OF COMMITMENT | DATE DEFENDANT COMMITTED |
|---|---|---|
| | | |

| DATE | UNITED STATES MARSHAL | (BY) DEPUTY MARSHAL |
|---|---|---|
| | | |

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

ATTEST AND CERTIFY,
**A TRUE COPY**
Clerk
U. S. District Court
Middle District of Tennessee

By: _Kathleen Beasley_
Deputy Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | NO. 08-mj-4009 (JSB) |
| | ) | |
| JOHN BARNER | ) | |

## ORDER HOLDING DEFENDANT TO ANSWER
## IN THE NORTHERN DISTRICT OF ILLINOIS

The defendant, John Barner, was arrested in this District on a Warrant issued on January 31, 2008, in the Northern District of Illinois, ND/IL Case No. 08CR0080, charging him with violation of 18 U.S.C. § 2423(b).

**Section I. Preliminary Proceedings:**

_X_     No Preliminary Hearing held because:

    _X_     defendant elected to defer preliminary hearing until return to the district of prosecution

_X_     Defendant waived identity hearing.

**Section II. Bond/Detention Proceedings.**

_X_     Government moved for detention and a hearing was held on February 8, 2008. Defendant was detained and a detention order entered.

**IT IS HEREBY ORDERED:**

_X_     That defendant be HELD TO ANSWER in the Northern District of Illinois and let a Commitment to Another District issue to the U.S. Marshal, the Court having ordered the defendant detained.

**It is SO ORDERED.**

_February 19, 2008_
**DATE**

JULIET GRIFFIN
United States Magistrate Judge

**ATTEST AND CERTIFY**
**A TRUE COPY**
Clerk
U. S. District Court
Middle District of Tennessee

By: *Kathleen Beasley*
Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

UNITED STATES OF AMERICA          )
                                  )
v.                                )     No. 08-4009-JSB
                                  )
JOHN BARNER                       )

## ORDER OF DETENTION

A hearing on the government's motion for detention was held on February 8, 2008, at which time Lary Maxwell of the U.S. Postal Inspection Service testified on behalf of the government, and Deborah Barner, the defendant's wife, and Dustin Barner, the defendant's son, testified on behalf of the defendant, the government introduced two exhibits and the defendant introduced an exhibit, and the Pretrial Services Report was made part of the record for the purposes of the proceeding.[1]

After considering the testimony and evidence presented at the hearing, the government's motion for detention (Docket Entry No. 2) was GRANTED.

The defendant, age 52, is charged in a criminal complaint issued on January 31, 2008, in the Northern District of Illinois with traveling in interstate commerce for the purpose of engaging in illicit sexual conduct, in violation of 18 U.S.C. § 2423(b).

Inspector Maxwell testified that on October 20, 2007, the Northbrook, Illinois Police Department responded to a 911 call regarding inappropriate conduct with a minor. According to Agent Maxwell, the complainant had been riding a bicycle in a park when he observed a man, who

---

[1] The defendant objected to certain portions of the Pretrial Services Report as follows: (1) in section 1 on page 2, the Report indicates that the defendant has a valid passport; however, the defendant has surrendered his passport and does not now have a valid passport in his possession; (2) in section 2 on page 2, the Report lists the defendant's assets, including business property in Christiana, Tennessee; however, defendant's counsel advised that the defendant has no interest in the business property; (3) in section 2 on page 2, the Report lists the fair market value of property in South Africa, but defendant's counsel represented that the equity in the property is only $4000.00.

In addition, defendant's counsel strenuously objected to and moved to strike page 5 of the Report, which included the results of a study conducted on risk management of sex offenders because, inter alia, the report was not submitted for peer review and its publication was withdrawn by the Department of Justice. The Court did not strike the report, but did not consider it in any way in making its determination on the issue of detention.

appeared to be in his 50's, very close to a minor girl who had her head in his lap. The responding officers determined that the defendant was 52 years old and the female was 15 years old (referred to herein as "the female"). The defendant explained that he was on a layover from Nashville to Syracuse, New York and that he was meeting with the female to discuss mission trips to Africa. The female corroborated the defendant's explanation and the defendant was not arrested at that time.

However, during subsequent interviews with the female, she advised that she had encountered the defendant in a computer chat room in July of 2007, and thereafter they communicated by instant messaging on a daily basis. According to Inspector Maxwell, the defendant first told the female that he was 17 years old. However, after telling her he had fallen in love with her, he told her he was really 38 years old but that his feelings about her were the same. Despite the defendant's admission that he was not 17 years old, Inspector Maxwell testified that the relationship continued, he showed himself to her by web cam, engaged in explicit sexual conversations, and they both engaged in mutual masturbation that was transmitted to the other by webcam and microphone. The female saved the chat messages, totaling 850-900 pages.

Inspector Maxwell testified that, on October 4, 2007, the defendant initiated a discussion about meeting the female in Chicago, where she lives. According to Inspector Maxwell, the defendant hired a driver to drive him from the airport to a park near the female's residence and told the driver to stay close "in case he had to get out quickly," explaining that he was meeting his niece whose parents did not want him to see her.

After the October 20, 2007, meeting, Inspector Maxwell related that an undercover local detective had discovered additional chat room contact between the defendant and another 14 year old female, in which the defendant represented himself to be 39 years old. Inspector Maxwell testified that, since 1992, the defendant has led mission trips to South Africa with junior high school, high school and college students. During a chat on September 19, 2007, the female advised that she had told her sister about the defendant, to which he responded "im dead," and that "im packing [for] south africa [since it] has no extradition agreement with US." See Government's Exhibit 1.

2

Inspector Maxwell also testified that in another chat, the female told the defendant "mom says hi," to which the defendant responded that he was headed to South Africa.

According to Inspector Maxwell, after the defendant's arrest, Deborah Barner, the defendant's wife, advised another agent that she and the defendant jointly owned a home in South Africa, and that the defendant was manic depressive and might be suicidal. The government introduced its Collective Exhibit 2, reflecting the defendant's international travel from 1989 through 2007, including two trips to South Africa in 2004, and at least two trips to South Africa in 2007.

Inspector Maxwell testified that, during the search of the defendant's residence, a small amount of marijuana was found, along with "artifacts" used to smoke marijuana, but he was not certain to whom the marijuana belonged. On cross examination, Inspector Maxwell testified that a computer at the Miller's Grocery Store, Ms. Barner's business, was seized temporarily and later returned to her because there was no indication of child pornography on the computer, although there were pornographic pictures on the computer.

Ms. Barner testified that she had known the defendant since she was 13 years old and he was 15 years old, that they were high school sweethearts, but that, after high school, the defendant "went on the road" to write and perform Christian gospel and country music, and she married someone else. After her divorce, she reunited with the defendant and married him in 1981. Ms. Barner considers the defendant her best friend and is still committed to the 27 year marriage. She explained that the defendant charged with the instant offense is "not the John I've known," who is a compassionate and caring person. Referring to the government, Ms. Barner testified that she knew "you people are out to get [the defendant]," and she described his mission work in which he had been engaged in the last 12 years. Ms. Barner emphasized that the defendant had never been alone with any children during any mission trips, and explained that the defendant had obtained a masters degree in theology to counsel people on God, that he serves as a CASA volunteer in Juvenile Court, and that she and he hoped to open a children's orphanage in South Africa.

3

Ms. Barner expressed her willingness to serve as the defendant's third party custodian, that the defendant would remove all computers at their home, that the defendant would submit to electronic monitoring, and that she and the defendant would participate in "emotional counseling." Ms. Barner explained that her initial comment that the defendant might be suicidal was based on what she thought she might do if she were in the defendant's situation, but that, upon further reflection, she did not think he was suicidal. Ms. Barner did acknowledge that the defendant was "always very depressed," and takes anti-depressant medication, although he has never received any emotional or psychiatric care.

On cross examination, Ms. Barner testified that she is aware of all travel that the defendant has done, and that all trips out of the country were to South Africa, except to Jamaica, which was also a mission trip. Upon questioning by the Assistant United States Attorney about the defendant's contacts with minor children, Ms. Barner became somewhat belligerent, refusing to answer a question because she disagreed with the implication of the question itself. Ms. Barner explained that the marijuana discovered during the search of the residence belonged to her and that the defendant "hates marijuana."

Dustin Barner, age 26, testified that he lives near Miller's Grocery Store where he works and he is 8-10 minutes from his parents' home. He explained that he has accompanied his father on many mission trips, that he is "best friends" with his father, and that the defendant is compassionate and the "greatest man [he's] ever known." Mr. Barner expressed his willingness to serve as a co-third party custodian.

Through counsel, the defendant proffered that he would be willing to comply with any conditions of release, including those outlined in the Pretrial Services Report, including polygraph testing and submission to a risk assessment evaluation.

The Pretrial Services Report did not reflect any criminal history for the defendant. The Pretrial Services Report recommended that the defendant be detained, but also included recommended conditions of pretrial release if the Court were to consider release.

4

The government argued that the Court should consider (1) that the offense charged involves a minor victim and that the internet relationship between the defendant and the minor female lasted three months prior to the in-person meeting, (2) the weight of the evidence and maximum possible sentence of 30 years; (3) the defendant's history and character, including his mental condition and lack of steady employment in recent years; (4) the defendant's financial resources; (5) the defendant's extensive travel out of this country and significant contacts overseas; and (6) the nature and seriousness of the danger that the defendant could pose.

Defendant's counsel described the instant offense as "an aberration," "one little flash," or "an anomaly," as opposed to the rest of the defendant's life that has been spent doing good deeds and being a responsible parent. Defendant's counsel contended that there was no chance of the defendant having any contact with minors if he were on electronic monitoring, subject to the third party custody of his wife and son, and without access to a computer. Defendant's counsel described as "inexplicable" how the defendant could be a risk of flight without a passport.

The defendant faces a rebuttable presumption in favor of detention because there is probable cause[2] to believe that he committed an offense involving a minor victim under 18 U.S.C. § 2423. See 18 U.S.C. § 3142(e). The Court found that he has rebutted the presumption by meeting his burden of production by the testimony of his mother and his son. See United States v. Guerra-Rodriguez, 59 F.3d 171, 1995 WL 378552 (6th Cir. 1995)(unpublished); United States v. Hazime, 762 F.2d 34 (6th Cir. 1985); United States v. Portes, 786 F.2d 758 (7th Cir. 1985). However, the presumption remains a factor to consider along with the statutorily enumerated factors set forth in 18 U.S.C. § 3142(g).

The Court finds that the activity in which the defendant is alleged to have engaged is extremely dangerous. The proof showed that the defendant not only engaged in explicit sexually-

---

[2] The defendant waived his right to a preliminary hearing in this District, but reserved his right to a preliminary hearing in the Northern District of Illinois. See Docket Entry No. 7. However, the Court deems that waiver to be sufficient to invoke the rebuttable presumption in favor of detention even though a preliminary hearing was not officially held in this District.

5

laden instant messaging, but also in exchanging depictions of himself and a 15 year old naked masturbating on a web cam, while full well knowing that she was only 15 years old. After three months of such communications, the proof showed that the defendant met the female in a park and that they were in a position or positions to arouse the suspicions of a passerby. The proof also showed that, even after the defendant's in-person contact with the 15 year old and even after being questioned by the police, he engaged in internet contact with another minor girl.

The Court further finds, from the testimony presented, that the weight of the evidence against the defendant is both significant and overwhelming, and that there is no indication that the defendant displayed either remorse or any inclination to change his behavior after his contact with law enforcement. It appears that, when confronted with the possibility that the minor might have told her sister and mother, the defendant determined that he would flee the country. Although the defendant may not himself have financial resources, church organizations have paid his way to South Africa on multiple occasions. The fact that the defendant has surrendered his passport does not necessarily bar him from traveling outside this country, especially when it appears that he has contacts in another country.

The defendant's wife would not be an appropriate third party custodian. Although she is understandably shocked by her husband's recent arrest, she exhibited somewhat of a "bunker mentality," asserting that the government is "out to get" her husband. While it is true that, by prosecuting the defendant, the government is, in fact, "out to get" her husband, she appears to dismiss the severity of the offense with which he is charged and the legitimacy of the prosecution. Other testimony also concerned the Court, specifically Ms. Barner's admission that she used marijuana and Inspector Maxwell's testimony that there was pornography on Ms. Barner's computer at her restaurant/grocery store. Similarly, the defendant's son would not be an appropriate third party custodian by himself. Neither he nor his mother appear to grasp the gravity of the offense with which the defendant is charged.

6

The Court finds, by a preponderance of the evidence, that there are no conditions that could be imposed that could reasonably assure the Court that the defendant would not be a risk of flight if released and further finds, by clear and convincing evidence, that there are no conditions that would reasonably assure the Court that the defendant would not be a danger to the community if released. In making that determination, the Court has considered the factors enumerated in 18 U.S.C. § 3142(g)(1), (2), (3)(A), and (4), along with the rebuttable presumption in favor of detention, which although rebutted, remains a factor to be considered.

Therefore, the defendant shall be detained pending trial, and shall be committed to the custody of the Attorney General for confinement in a corrections facility, separate to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. While so detained, the defendant shall be afforded reasonable opportunity for private consultation with counsel. On order of a court of the United States or on request of an attorney for the government, the person in charge of the corrections facility in which the defendant is detained shall deliver the defendant to a United States Marshal for the purpose of an appearance in connection with any court proceeding in this case.

Any party aggrieved by this order may seek review as provided in 18 U.S.C. § 3145.

It is so ORDERED.

JULIET GRIFFIN
United States Magistrate Judge

7

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

ATTEST AND CERTIFY,
A TRUE COPY
Clerk
U. S. District Court
Middle District of Tennessee

By: *Kathryn Beasley*
Deputy Clerk

| | | | |
|---|---|---|---|
| UNITED STATES OF AMERICA, | ) | | |
| | ) | | |
| | ) | | |
| v. | ) | NO. | 08-4006 JSB |
| | ) | | 08-4007 JSB |
| JOHN R. BARNER | ) | | 08-4009 JSB |
| | ) | | |

### MOTION TO UNSEAL

The Government respectfully moves that the Court direct the Clerk's Office to unseal the two

Search Warrants and the Complaint and Warrant in the above-styled case on the basis that the warrants

have all been executed and there is no further need for the warrants to remain sealed.

Respectfully submitted,

EDWARD M. YARBROUGH
United States Attorney for the
Middle District of Tennessee

s/ S. Carran Daughtrey
S. Carran Daughtrey
Assistant U. S. Attorney
110 9th Avenue, South, Suite A-961
Nashville, TN 37203-3870
Phone: 615/736-5151

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served by electronic
filing or by mail on Doug Thoresen on this, the 5th day of February, 2008.

s/ S. Carran Daughtrey
S. Carran Daughtrey

AO 187 (Rev. 4/82)                    **EXHIBIT AND WITNESS LIST**

| USA | vs. | _John Barner_ | DISTRICT COURT _mD/TN_ |
|---|---|---|---|
| PLAINTIFF'S ATTORNEY | DEFENDANT'S ATTORNEY | | DOCKET NUMBER _08-4009_ |
| _Carrie Daughtrey_ | _Doug Thoresen_ | | TRIAL DATE(S) _2-8-08_ |
| PRESIDING JUDGE _MJ Griffin_ | COURT REPORTER _taped_ | | COURTROOM DEPUTY _Jurco_ |

| PLF. NO. | DEF. NO. | DATE OFFERED | Marked | Admitted | DESCRIPTION OF EXHIBITS* AND WITNESSES |
|---|---|---|---|---|---|
| 1 | | 2-8-08 | ✓ | ✓ | Parts of Chat log from 9/19/07 |
| 2 | | " | ✓ | ✓ | Immigration docs re: border crossings coll. |
| | 1 | " | ✓ | ✓ | Letter from D's sister. |
| | | | | | |
| | | | | | |
| | | | | | ATTEST AND CERTIFY A TRUE COPY Clerk U. S. District Court Middle District of Tennessee By: _Kathryn Beasley_ |

*Include a notation as to the location of any exhibit not held with the case file or not available because of size.

**MAGISTRATE JUDGE GRIFFIN COURTROOM MINUTES FOR CRIMINAL PROCEEDINGS**

U.S.A. v. _John Barner_ , No. _08-4009_

**ATTORNEY FOR GOVERNMENT:**

_Daughtery_

**ATTORNEY FOR DEFENDANT:**

_Thoreson_

**INTERPRETER NEEDED?**    YES    NO    **LANGUAGE/INTERPRETER:** _____
☐ PRESENT        ☐ ON TELEPHONE

☐ **INITIAL APPEARANCE**                    ☐ **DEFENDANT ARRESTED ON:** _____
                                            ☐ **DEFENDANT APPEARED ON A SUMMONS**

DEFENDANT HAS A COPY OF:
☐ Complaint ☐ Indictment ☐ Information ☐ Supervised Release Pet. ☐ Other _____
☐ Defendant advised of the charges and the maximum penalties
☐ Defendant has a copy of notice of rights
☐ Defendant advised of right to counsel                  ☐ Counsel retained
☐ Defendant sworn and financial affidavit filed          ☐ FPD Appointed
☐ Defendant advised of right to silence
☐ Defendant advised of right to identity hearing
☐ Defendant advised of right to preliminary hearing
☐ Government moved for detention                         ☐ Defendant in state/federal custody
☐ Defendant temporarily detained                        ☐ ICE detainer on defendant
☐ Defendant ordered to psychological/psychiatric evaluation
☐ Defendant remains on current conditions of supervised release
☐ Defendant released on:
    ☐ Own recognizance with conditions of release    ☐ standard    ☐ special
    ☐ Appearance bond in the amount of: _____
    ☐ Property bond [description of property]:_____
    ☐ Performance bond [as set out in conditions of release]

☐ **GRAND JURY WAIVED IN OPEN COURT**    [Defendant sworn and advised of rights by Court]

☐ **ARRAIGNMENT**            ☐ **ARRAIGNMENT ON SUPERSEDING**
    ☐ Defendant acknowledges he/she has copy of Indictment/Information
    ☐ Indictment/Information read to defendant by Judge   ☐ Defendant waives reading thereof
    **PLEA:** ☐ **GUILTY**   ☐ **NOT GUILTY**
    ☐ Defendant intends to plead guilty and case referred to District Judge
    ☐ Misdemeanor - defendant consented to trial before Magistrate Judge
    ☐ Written plea agreement/filed in open Court       ☐ Oral plea agreement
    ☐ Guilty plea:    ☐ Accepted       ☐ Rejected       ☐ Taken under advisement

☐ **IDENTITY HEARING**
    ☐ Held, defendant found to be person named in warrant
    ☐ Held, defendant found NOT to be person named in warrant and released
    ☐ Waived in open Court

ATTEST AND CERTIFY
A TRUE COPY
Clerk
U. S. District Court
Middle District of Tennessee

By: _Kathelyn Bradee_
Deputy Clerk

**DATE:** _2/8/08_        **TOTAL TIME:** _174 mn_
**BEGIN TIME:** _11:46_      **END TIME:** _2:40_
**TAPE NO.(S)** _G2008-027, 028_

Form Revised 1/4/2008                **Page 1 of 2**

UNITED STATES OF AMERICA v. *John Barner*     NO. 08-4009

☐ **PRELIMINARY HEARING**
- ☐ Held to answer/bound over                    ☐ Discharged from custody
- ☐ Held to answer in District of Prosecution
- ☐ Defendant reserved right to have hearing in District of Prosecution
- ☐ Defendant waived preliminary hearing

☒ **DETENTION HEARING**
- ☐ Government withdrew motion for detention or agreed to release
- ☒ Pretrial Services Report made a part of the record ☒  ☐ Counsel moved to retain copy of PTSR/granted
- ☐ Bond set at: _____    ☐ Defendant released on [date]: _____
- ☐ Defendant elected to have hearing in District of Prosecution
- ☒ Defendant waived detention hearing          ☐ Defendant reserved right to hearing in future
- ☒ Defendant detained, order to enter          ☐ ICE detainer pending
- ☒ Defendant to remain in Federal custody      ☐ Defendant to be returned to State custody
- ☐ Government moved for stay of execution of release pending appeal
  - ☐ Motion granted                           ☐ Motion denied
- ☒ Defendant advised of right to appeal

☐ **OTHER**
- ☐ Type of hearing and outcome: _____
  _____
  _____

☐ **DEFENDANT ADVISED OF RIGHT TO RULE 20 TRANSFER**

☐ **DEFENDANT DID NOT APPEAR AS DIRECTED, BENCH WARRANT ISSUED**

Preliminary/Detention/Arraignment hearing CONTINUED TO:_____

**NOTES/EVIDENTIARY MATTERS/SENTENCING:**     (Witnesses, Exhibits, Attach W/Ex List if necessary)

Oral Mtn by Gov for Δ to pay for Δ's appt. atty
Ct told Gov to file a formal motion - Ct will
not rule on mtn prior to det hrg

\* Ct will not consider p.5 of PTSR

GW - Larry Maxwell, US Postal, Chicago

Oral motion to unseal whole case

Exhibit List separate

DW - Debbie Barner, Δ's wife

DW - Dustin Barner, Δ's son

Proffer from Δ

Presumption rebutted

%. AO 470 (Rev. 12/03) Order of Temporary Detention

# UNITED STATES DISTRICT COURT

MIDDLE          District of          TENNESSEE

UNITED STATES OF AMERICA

V.

**ORDER OF TEMPORARY DETENTION**
**PENDING HEARING PURSUANT TO**
**BAIL REFORM ACT**

**FILED**
U.S. DISTRICT COURT
MIDDLE DISTRICT OF TENN.

FEB 0 5 2008

BY_____
DEPUTY CLERK

JOHN BARNER
*Defendant*

Case Number:  08-4009 JSB

Upon motion of the _____ Government _____, it is ORDERED that a

detention hearing is set for _____February 8, 2008_____ * at _____11:00 a.m._____
                                                        Date                                                        Time

before _____E. Clifton Knowles, U.S. Magistrate Judge_____
                        .                        *Name of Judicial Officer*

_____Courtroom 661, United States Courthouse_____
                        *Location of Judicial Officer*

Pending this hearing, the defendant shall be held in custody by (the United States marshal) ( _____

_____U.S. Marshal_____ ) and produced for the hearing.
                        *Other Custodial Official*

Date: _____February 5, 2008_____          _John Bryant_ U.S. M J.
                                                                                        *Judge*

ATTEST AND CERTIFY
**A TRUE COPY**
Clerk
U. S. District Court
Middle District of Tennessee
*Kathryn Beasley*
Deputy Clerk

*If not held immediately upon defendant's first appearance, the hearing may be continued for up to three days upon motion of the Government, or up to five days upon motion of the defendant. 18 U.S.C. § 3142(f)(2).

    A hearing is required whenever the conditions set forth in 18 U.S.C. § 3142(f) are present. Subsection (1) sets forth the grounds that may be asserted only by the attorney for the Government; subsection (2) states that a hearing is mandated upon the motion of the attorney for the Government or upon the judicial officer's own motion if there is a serious risk that the defendant (a) will flee or (b) will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate a prospective witness or juror.

**FILED**
U.S. DISTRICT COURT
MIDDLE DISTRICT OF TENN.

FEB 0 5 2008

BY_____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE

UNITED STATES OF AMERICA

v.

JOHN BARNER

Defendant

WAIVER OF RULE 5 & 5.1 HEARINGS
(Complaint/Indictment)

Case Number:   08-4009 JSB

Charging Districts
Case Number:   08 CR 0080

I understand that charges are pending in the _Northern_ District of _Illinois_, alleging violation of

_18 U.S.C. § 2423(b)_, and that I have been arrested in this District and taken before a United

States Magistrate Judge, who informed me of the charge(s) and of my right to:

(1)   Retain counsel or request the assignment of counsel if I am unable to retain counsel;
(2)   An identity hearing to determine if I am the person named in the charges;
(3)   A preliminary examination (unless an indictment has been returned or an information filed)
       to determine whether there is probable cause to believe an offense has been committed by
       me (either in this District or the District of Prosecution);
(4)   My right to a hearing on the Government's motion for detention (either in this District or the
       District of Prosecution); and
(5)   Request transfer of the proceedings to this District pursuant to Rule 20, Fed. R. Crim. P., in
       order to plead guilty;

I HEREBY WAIVE (GIVE UP) MY RIGHT TO THE FOLLOWING:

(✓)   an identity hearing in the Middle District of Tennessee;
(✓)   a preliminary examination in the Middle District of Tennessee;
( )    a detention hearing in the Middle District of Tennessee.

I HEREBY REQUEST THE FOLLOWING:

(✓)   a preliminary hearing to be held in the district of prosecution;
( )    a detention hearing to be held in the district of prosecution.

**ATTEST** AND CERTIFY
**A TRUE COPY**
Clerk
**U. S. District Court**
**Middle District of Tennessee**

By: _Kathleen Bradley_
Deputy Clerk

I therefore consent to the issuance of an order requiring my appearance in the prosecuting district
where the charge(s) is(are) pending against me.

_____
Defendant

_____
Counsel for Defendant

APPROVED IN OPEN COURT:   _John Bryant_        _2-5-08_
                    United States Magistrate Judge        Date

**FILED**
U.S. DISTRICT COURT
MIDDLE DISTRICT OF TENN.

FEB 0 5 2008

BY_____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

UNITED STATES OF AMERICA )
)
v. )   NO. 08-4009 JSB
)
JOHN BARNER )

### O R D E R

On the basis of the defendant's financial affidavit in this cause, the Court determines that the defendant:

_____   is financially able to employ counsel and, therefore, denies his/her application for appointment of counsel at government expense.

__X__   is financially unable to employ counsel and appoints the Office of the Federal Public Defender to represent him/her.

__X__   is financially unable to pay the fee of any witness and pursuant to Rule 17(b), Fed.R.Crim.P., Title 18, U.S.C., Clerk shall issue a subpoena for any witness, PROVIDED that the defendant and his counsel shall submit subpoenas only for those witnesses whose presence is necessary to present an adequate defense to the charge or charges.

__X__   Upon motion of the Government, the Court may order repayment or partial repayment from the defendant for the attorney and witness fees for these services should it appear the defendant has such ability at a later time.

It is so ORDERED.

Date: February 5, 2008

_____
UNITED STATES MAGISTRATE JUDGE

cc: Federal Public Defender
    U.S. Attorney's Office
    U.S. Probation Office

ATTEST AND CERTIFY
A TRUE COPY
Clerk
U. S. District Court
Middle District of Tennessee

By: _Kathryn Beasley_
Deputy Clerk

# FINANCIAL AFFIDAVIT

### IN SUPPORT OF REQUEST FOR ATTORNEY, EXPERT OR OTHER COURT SERVICES WITHOUT PAYMENT OF FEE

☐ CJA

**FILED**

IN UNITED STATES ☐ MAGISTRATE ☐ DISTRICT ☐ APPEALS COURT or ☐ OTHER PANEL (Specify below)

| IN THE CASE | FOR | LOCATION NUMBER |
|---|---|---|

IN THE CASE: USA v. BARNER

FOR: MIDDLE DISTRICT OF TENNESSEE

AT: NASHVILLE

LOCATION NUMBER — DISTRICT COURT, MIDDLE DISTRICT OF TENN.

FEB 0 5 2008

BY_____

**PERSON REPRESENTED** (Show your full name): John Robert Barner Jr.

DOCKET NUMBERS
Magistrate: 08-4009 JEB
District Court
Court of Appeals

1 ☑ Defendant—Adult
2 ☐ Defendant - Juvenile
3 ☐ Appellant
4 ☐ Probation Violator
5 ☐ Parole Violator
6 ☐ Habeas Petitioner
7 ☐ 2255 Petitioner
8 ☐ Material Witness
9 ☐ Other

**CHARGE/OFFENSE** (describe if applicable & check box →) ☐ Felony ☐ Misdemeanor

## ANSWERS TO QUESTIONS REGARDING ABILITY TO PAY

### ASSETS

**EMPLOYMENT**

Are you now employed? ☐ Yes ☑ No ☐ Am Self-Employed

Name and address of employer: _____

IF YES, how much do you earn per month? $ _____

IF NO, give month and year of last employment **5·04**
How much did you earn per month? **900.**

If married is your Spouse employed? ☑ Yes ☐ No

IF YES, how much does your Spouse earn per month? $ **not sure**

If a minor under age 21, what is your Parents or Guardian's approximate monthly income? $ _____

**OTHER INCOME**

Have you received within the past 12 months any income from a business, profession or other form of self-employment, or in the form the form of rent payments, interest, dividends, retirement or annuity payments, or other sources? ☐ Yes ☑ No

IF YES, GIVE THE AMOUNT RECEIVED & IDENTIFY THE SOURCES

RECEIVED $ _____    SOURCES _____

**CASH**

Have you any cash on hand or money in savings or checking accounts? ☑ Yes ☐ No IF YES, state total amount $ **not sure**

**PROPERTY**

Do you own any real estate, stocks, bonds, notes, automobiles, or other valuable property (excluding ordinary household furnishings and clothing)? ☑ Yes ☐ No

IF YES, GIVE THE VALUE AND DESCRIBE IT

| VALUE | DESCRIPTION |
|---|---|
| 100,000. | house |
| 100,000 | rental property |
| 2,000 | nissan truck 2000 |
| 5,000 | mini-cooper 2002 |

### OBLIGATIONS & DEBTS

**DEPENDENTS**

MARITAL STATUS:
☐ SINGLE
☑ MARRIED
☐ WIDOWED
☐ SEPARATED OR DIVORCED

Total No. of Dependents: 0

List relationship of dependents, DO NOT LIST NAMES, ONLY AGES. (example: husband, wife, son, daughter)

**DEBTS & MONTHLY BILLS** (LIST ALL CREDITORS, INCLUDING BANKS, LOAN COMPANIES, CHARGE ACCOUNTS, ETC.)

| APARTMENT OR HOME: | Creditors | Total Debt | Monthly Paymt. |
|---|---|---|---|
| | Citi mortgage - home | $ 50,000 | $ 600. |
| | First Nat Bank - rental | $ 100,000 | $ 1,000. |

I certify under penalty of perjury that the foregoing is true and correct. Executed on (date) **2.5.09**

SIGNATURE OF DEFENDANT (OR PERSON REPRESENTED) ▶

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE

ATTEST AND CERTIFY
**A TRUE COPY**
Clerk
U. S. District Court
Middle District of Tennessee

By: *Kathleen Beasley*
Deputy Clerk

UNITED STATES OF AMERICA      )
                              )
                              )
v.                            )      NO.  08-4009  JSB
                              )
                              )
JOHN BARNER                   )

## ACKNOWLEDGMENT OF RECEIPT AND REVIEW
## OF NOTICE AND EXPLANATION OF RIGHTS

I, ____JOHN BARNER____, hereby state that I have read the foregoing "Important Notice to Defendant and Explanation of Rights and Proceedings" (or that it has been explained to me), that I understand my rights as set forth therein, and that I have been provided with a copy of the foregoing Notice.

Signed in open Court this __5th__ Day of __FEBRUARY__, 20 __08__.

_____
Signature of Defendant

_____
Signature of Counsel

__John Bryant__, U.S.M.S.
Signature of Judicial Officer

6

## MAGISTRATE JUDGE'S RESUME

Time utilized: 15 minutes

UNITED STATES OF AMERICA v. JOHN BARNER

CRIMINAL NO. __08-4009 JSB__    OUT OF DISTRICT NO. __08 CR 0080 ND/IL__

INTERPRETER: __N/A__    LANGUAGE: _____

GOVERNMENT REPRESENTED BY __Jimmie Lynn Ramsaur for Carrie Daughtrey__

COUNSEL FOR DEFENDANT _____Doug Thoresen_____

INITIAL HEARING HELD: _2/5/08_    Defendant Arrested: _2/5/08_
    Defendant has a copy of and was advised of contents of:
    __X__Complaint    ____Indictment    ____Other
    ____Information    ____Supervised Release Petition

  __X__Defendant advised of constitutional rights
  __X__Defendant advised of right to preliminary hearing
  __X__Financial Affidavit filed
  __X__Federal Public Defender appointed
  __X__Government filed motion for Detention
  __X__Defendant temporarily detained
  ____Defendant is in State/Federal custody
Defendant released on_____ bond/with conditions of release

**WAIVED IDENTITY/PRELIMINARY HEARING TO BE HELD IN DISTRICT OF PROSECUTION**
Defendant: ____Bound Over    ____Discharged
        ____Held to Answer in District of Prosecution
        ____Held for Revocation Hearing

**DETENTION HEARING SET FOR:** _2/8/08 at 11:00 a.m. before MJ Knowles_
  Bond set at_____
  Defendant detained pending trial, order to be entered

**GRAND JURY WAIVED IN OPEN COURT:**_____

**ARRAIGNMENT HELD:**_____    **WAIVED:**_____
  Defendant acknowledges he/she has copy of Information/Indictment
  Waives reading thereof____    **PLEA: GUILTY   NOT GUILTY**
  Intends to plead guilty and referred to District Judge_____
  Misdemeanor - defendant consented to trial before Magistrate Judge:_____
  Defendant did not appear, bench warrant issued_____

**OTHER:**
  Defendant appeared on_____ to apply for appointment of counsel
  Financial affidavit filed:    NO    YES
  Federal Public Defender appointed:    NO    YES

**PRELIMINARY/DETENTION/ARRAIGNMENT HEARING CONTINUED TO:**_____

**PROCEEDINGS CONDUCTED BEFORE MAGISTRATE JUDGE: BROWN  BRYANT  GRIFFIN  KNOWLES**

ATTEST AND CERTIFY
A TRUE COPY
Clerk
U. S. District Court
Middle District of Tennessee

By: _Kathryn Beasley_
Deputy Clerk

**FILED**
U.S. DISTRICT COURT
MIDDLE DISTRICT OF TENN.

FEB 0 5 2008

BY_____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | 0 8 - 4 0 0 9  **JSB** |
|  | ) |  |
| v. | ) | NO.  08 CR 0080 (NDIL) |
|  | ) | MAGISTRATE JUDGE BRYANT |
| JOHN BARNER | ) |  |
|  | ) |  |

## MOTION FOR DETENTION

The United States of America, by and through S. Carran Daughtrey, Assistant United States Attorney for the Middle District of Tennessee, and requests a hearing pursuant to 18 U.S.C. § 3142(f)(1)(A), which mandates a hearing upon motion of the government in a case that involves a crime of violence.  In this case, the defendant is charged with violations of 18 U.S.C. §§ 2423. Pursuant to 18 U.S.C. § 3156(a)(4)(C), the term "crime of violence," as used in 18 U.S.C. § 3142, includes any felony under chapter 117.

The government further moves that this defendant be detained unless he is able to overcome the rebuttable presumption, pursuant to 18 U.S.C. § 3142(e), that no conditions, or combination of conditions, will reasonably assure his presence in court or the safety of the community, if this Court finds that there is probable cause to believe that the defendant committed an offense under 18 U.S.C. § 2423.

ATTEST AND CERTIFY
A TRUE COPY
Clerk
U. S. District Court
Middle District of Tennessee

By: _Kathryn Beasley_
Deputy Clerk

The government requests a hearing as soon as possible as the lead agent is here in Tennessee from out of state.

Respectfully submitted,

EDWARD M. YARBROUGH
United States Attorney for the
Middle District of Tennessee

*S. Carran Daughtrey*

S. Carran Daughtrey
Assistant United States Attorney
110 Ninth Avenue South, Suite A-961
Nashville, Tennessee 37203-3870
Telephone: 615/736-5151


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served on defense counsel on this, the 5th day of February, 2008.

*S. Carran Daughtrey*

S. Carran Daughtrey

2

AO 442 (REV.3/92) Warrant for Arrest

AUSA KENNETH E. YEADON (312) 353-5326

# UNITED STATES DISTRICT COURT

NORTHERN _____ DISTRICT OF _____ ILLINOIS, EASTERN DIVISION

**FILED**
U.S. DISTRICT COURT
MIDDLE DISTRICT OF TENN.

FEB 0 5 2008

BY_____
DEPUTY CLERK

UNITED STATES OF AMERICA

v.

JOHN BARNER

08 - 4009 JSB

**WARRANT FOR ARREST**

**CASE NUMBER:**

UNDER SEAL

0 ICR 0080

To:   The United States Marshal
      and any Authorized United States Officer

YOU ARE HEREBY COMMANDED to arrest   JOHN BARNER _____
                                                    Name

and bring him or her forthwith to the nearest magistrate to answer a(n)

___Indictment   ___Information   _X_Complaint   ___Order of court   ___Violation Notice   ___Probation Violation Petition

charging him or her with:   (brief description of offense)

On or about October 20, 2007, in the Northern District of Illinois, Eastern Division, defendant JOHN BARNER did travel in interstate commerce from the state of Tennessee to the state of Illinois for the purpose of engaging in illicit sexual conduct as defined in Title 18, United States Code, Section 2423(f);

In violation of Title 18, United States Code, Section 2423(b).

MORTON DENLOW _____
Name of Issuing Officer

_Morton Denlow_ (signature)
Signature of Issuing Officer

_____
(By) Deputy Clerk

Bail fixed at $ _____   by _____

U.S. MAGISTRATE JUDGE _____
Title of Issuing Officer

JANUARY 31, 2008 at Chicago, IL _____
Date and Location

ATTEST AND CERTIFY,
A TRUE COPY
Clerk
U. S. District Court
Middle District of Tennessee

Name of Judicial Officer
By: _Katherine Brasley_
      Deputy Clerk

| RETURN | | |
|---|---|---|
| This warrant was received and executed with the arrest of the above-named defendant at _Murfreesboro, TN_ | | |
| DATE RECEIVED  01/31/2008 | NAME AND TITLE OF ARRESTING OFFICER  L.S. MAXWELL POSTAL INSPECTOR | SIGNATURE OF ARRESTING OFFICER |
| DATE OF ARREST  02/05/2008 | | |

AUSA KENNETH E. YEADON, (312) 353-5326

(REV.5/85) Criminal Complaint

# UNITED STATES DISTRICT COURT

___NORTHERN___    DISTRICT OF    ___ILLINOIS, EASTERN DIVISION___

UNITED STATES OF AMERICA

v.

JOHN BARNER

**RECEIVED** MAGISTRATE JUDGE DENLOW

CRIMINAL COMPLAINT

JAN 3 1 2008

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

CASE NUMBER:

**08CR 0080**

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about ___October 20, 2007___ in ___Lake___ County, in the ___Northern___ District of ___Illinois___ defendant did,

travel in interstate commerce from the state of Tennessee, to the state of Illinois, for the purpose of engaging in illicit sexual conduct as defined in Title 18, United States Code, Section 2423(f),

in violation of Title _18_ United States Code, Section _2423(b)_ .

I further state that I am an ___Inspector with the U.S. Postal Inspection Service___ and that this complaint is based on the following facts:

PLEASE SEE ATTACHED AFFIDAVIT.

Continued on the attached sheet and made a part hereof: __X__ Yes    _____ No

LARY S. MAXWELL, Complainant

Sworn to before me and subscribed in my presence,

January 31, 2008
Date

at ___Chicago, Illinois___
City and State

U.S. Magistrate Judge Morton Denlow
Name & Title of Judicial Officer

Signature of Judicial Officer

STATE OF ILLINOIS     )
                        ) ss
COUNTY OF COOK     )

### AFFIDAVIT FOR CRIMINAL COMPLAINT

I, Lary S. Maxwell, being duly sworn, depose and state:

1.     I am a United States Postal Inspector, and have been so employed since July of 1984. I am currently assigned to the Chicago Division of the United States Postal Inspection Service ("USPIS"). I am responsible for conducting investigations involving, among other things, child sexual exploitation in violation of Title 18, United States Code, Section 2423(b).

2.     Since June 2002, I have been assigned to the Federal Child Exploitation Strike Force, a multi-jurisdictional, pro-active unit comprised of law enforcement officers from the Postal Inspection Service, Detectives from the Cook County Sheriff's Police Department, Youth Officers from the Chicago Police Department, and Investigators from the Cook County State's Attorney's Office. The purpose of the Strike Force is to identify and investigate the activities of persons suspected of sexually exploiting or sexually abusing children, oftentimes by the use of the United States Mails.

3.     At several schools and seminars, including at the USPIS in Chicago, Illinois and the U.S. Postal Inspection Service's Computer Investigations Division, Washington, D.C., I have received training in the investigation of child pornography and child sexual exploitation, including specialized instruction on how to conduct investigations of child sexual exploitation and child pornography. As part of the training at these schools and seminars, I observed and reviewed videotapes, photographs, computer graphics and other media deemed to be child pornography.

4.      As part of my work, I have conducted approximately 37 child sexual abuse and child sexual exploitation investigations.  These matters include investigations involving persons suspected of traveling with the intent to engage in illicit sexual conduct, in violation of 18 U.S.C. § 2423(b).

5.      I am aware of the information set forth in this affidavit through investigation conducted by me personally, and investigation conducted by other members of the Federal Child Exploitation Strike Force, and other law enforcement officers.

### PURPOSE OF THE AFFIDAVIT

6.      The U.S. Postal Inspection Service is conducting an investigation involving violations of Title 18, United States Code, Section 2423(b) (interstate travel with intent to engage in illicit sexual conduct) by JOHN BARNER.

7.      I submit this affidavit in support of my belief that probable cause exists to charge BARNER with violations of 18 U.S.C. § 2423(b), as set forth in the attached criminal complaint. The information contained in this affidavit is provided for the limited purpose of establishing probable cause in support of the attached criminal complaint.  This affidavit does not set forth each and every fact known to me concerning this investigation.

### STATUTE

8.      Under Title 18, United States Code, Section 2423(b), a person who travels in interstate commerce for the purpose of engaging in any illicit sexual conduct with another person shall be fined under this title or imprisoned not more than 30 years, or both.

9.      Under 18 U.S.C. § 2423(f), "illicit sexual conduct" is defined as, among other things, a sexual act with a person under 18 years of age that would be a violation of chapter 109A, namely:  whoever in the special maritime and territorial jurisdiction of the United States

knowingly engages in a sexual act with another person who has attained the age of 12 years but has not attained the age of 16 years and is at least four years younger than the person so engaging.

## INVESTIGATION OF JOHN BARNER

*Incident at Wood Oaks Park, Northbrook, Illinois*

10.    On October 20, 2007, at approximately 4:53 pm, the Northbrook, Illinois Police Department received a 911 complaint from a concerned citizen. The concerned citizen stated that while riding his bicycle through Wood Oaks Park in Northbrook, Illinois he observed a man who appeared to be over 50 years old engaged in possible inappropriate behavior with a girl who appeared to be in her early teens. The concerned citizen stated that he had seen the girl with her head down in the man's lap.

11.    Officer Ferguson and Sgt. Matheny of the Northbrook, Illinois Police Department responded to Wood Oaks Park. The police officers observed an older male identified as JOHN R. BARNER, age 52, seated on a bench in the park next to a minor female. In order to protect her identity, the 15 year old girl is referred to in this affidavit as FM, for female minor. The minor female was 15 years old and was born in May of 1992. Investigation has determined that BARNER was born in April of 1955.

12.    BARNER told the officers that he was at Wood Oaks Park to talk to FM about a missionary trip to Africa. BARNER related he was on a layover from a flight from Tennessee to Syracuse, New York, with a stop in Chicago. BARNER showed the officers his airline boarding pass. BARNER stated he had been at the park for approximately 45 minutes with FM, and that he and FM had talked the entire time about his missionary work around the world. The officers took digital pictures of BARNER. One of the pictures taken by the officers showed that

3

BARNER had a tattoo of an Egyptian Ankh on his arm.

13.     The officers interviewed FM. FM stated approximately three months earlier she had started to talk to BARNER's son in a Yahoo! Internet chat room about a missionary trip to Africa. She further stated she had also talked to BARNER's son and BARNER by phone, and had discussed meeting BARNER on his layover stop in Chicago. FM stated that BARNER did not touch her inappropriately or make her uncomfortable during the approximately 45 minutes that they were in the park together.

*Interview of FM on October 24, 2007*

14.     On October 24, 2007, Detective Daniel Strickland of the Northbrook Police Department interviewed FM. FM stated that in or around July 2007, she met BARNER online in a Yahoo! chat room called "Rock6." BARNER contacted her in the chat room using the Yahoo! ID "jbintn9." BARNER initiated the conversation by asking FM for her "a/s/l," which was a request for her age, sex and location. FM responded to BARNER that she was a 15 year old female from Illinois.

15.     FM stated that for much of the time she believed that BARNER was a 17 year-old boy from Murfreesboro, Tennessee. FM stated the Internet chats began with them talking as friends, and then BARNER began to tell her how much he was in love with her. FM stated after approximately a month, BARNER admitted that he was not 17 years old, but was much older. BARNER sent FM an email apologizing for lying about his age.

16.     FM told Detective Strickland that a little while after BARNER sent her the apology about his age, he started to show himself on a webcam that was attached to his computer. BARNER appeared nude on the webcam, and masturbated for FM on the webcam.

4

FM stated she also showed herself to BARNER using a webcam attached to her computer, and masturbated on the webcam for BARNER.

17.    FM told Detective Strickland that she and BARNER agreed to meet in person, and that BARNER scheduled his flight to New York with a layover in Chicago.  BARNER arranged for a ride from an Internet web site called Craig's List to drive him from O'Hare Airport to Wood Oaks Park, and then back to O'Hare after they met.  FM told Detective Strickland that she had performed oral sex on BARNER at Wood Oaks Park, and that BARNER had inserted his finger into her vagina while they were sitting on the bench at Woods Oak Park.

*Interview of FM on November 19, 2007*

18.    On November 19, 2007, FM was interviewed by Investigator Diane DiSalvo of the Cook County States Attorney's Office and Detective Strickland of the Northbrook Police Department.  FM stated that in August 2007 she began to show herself to BARNER by webcam from her bedroom in Northbrook, Illinois.

19.    In September 2007, BARNER began to show himself to FM by webcam from his home office in Murfreesboro, Tennessee.  FM stated that she saw a dark colored swivel chair, desk, keyboard, bookshelves and a piano in the room.  FM stated that she saw BARNER's face on the webcam, and a tattoo on his arm of any Egyptian Ankh.  FM stated that on one occasion BARNER used the print screen feature on his computer to capture or save an image of her face.  BARNER showed the image to FM via the Instant Message chat conversation.

20.    FM stated that she and BARNER engaged in cybersex and masturbated in front of one another via webcam approximately five times a week.  FM stated that while webcaming for BARNER, she masturbated, touched her breasts and penetrated her vagina with her fingers.

5

When BARNER was on his webcam, he masturbated until he reached ejaculation.

21.   · FM described the sexually explicit acts that BARNER asked her to do while she was on webcam.  In mid October 2007, BARNER asked FM to place a hairbrush inside her vagina, which she did.  While she was on webcam, BARNER requested to see FM's anus, which she also showed him.  Barner also asked FM take the phone to the bathroom while they talked so he could listen while she urinated, which FM declined to do.

22.   FM stated that on October 20, 2007, she met BARNER at the Wood Oaks Park, where they spent approximately one hour together.  During that time, she performed oral sex on BARNER, and BARNER penetrated her vagina with his finger.  FM stated she stopped performing oral sex on BARNER when a man rode by on his bike.  FM stated that BARNER came over to her after talking to the Northbrook Police and whispered to her to tell the police they met on a website for missionary work.  FM stated this is what she did.

*Interview of BARNER's Driver*

23.   On October 25, 2007, Detective Daniel Strickland interviewed Individual A. Individual A stated that BARNER hired him to drive BARNER from the Chicago O'Hare Airport to Wood Oaks Park in Northbrook, Illinois and back to O'Hare Airport.  He picked BARNER up from Chicago O'Hare Airport on October 20, 2007 at approximately 3:20 pm. Individual A said BARNER called the person he was going to meet, and the person gave directions to the park in Northbrook.  Individual A stated he asked who BARNER was meeting in the park and BARNER told him it was his niece, but that his sister and her new husband did not like BARNER and did not want him to see the niece.  BARNER asked Individual A to stay close in case he had to leave quickly.  When the police showed up BARNER told the police that

6

Individual A was just his driver and did not know anything. BARNER told Individual A on the ride back to O'Hare Airport that his sister had called the police.

24.    Individual A provided Detective Strickland with an email that he had received from BARNER from the email address of jbarner@juno.com. At the top of the email from BARNER to Individual A was typed, "I put my arr/dpt in bold below. I'll only be in Northbrook for an hour or so. Thanks again, JB 615-542-1149." The phone number (615) 542-1149 is the same number BARNER gave FM to call him.

25.    Copied into the email appears to be a flight itinerary obtained from United Airline's web site. The itinerary showed the person flying as JOHN BARNER. The itinerary included billing and delivery information for BARNER at 2435 Dilton Mankin Road, Murfreesboro, Tennessee 37127 and a telephone number of (615) 890-2078.

26.    The itinerary shows that BARNER had a reservation to fly on October 20, 2007 from Nashville, Tennessee to O'Hare Airport, arriving in Chicago on United Airlines Flight 7261 at 3:19 pm. In Chicago, BARNER had a layover until 6:55 pm when he had a reservation to take a connecting flight to Syracuse New York. The itinerary also shows that on October 23, 2007, BARNER had reservations to fly directly from Syracuse back to Nashville.

*FM Instant Message Searches*

27.    On October 21, 2007, FM's mother consented to a search of two laptop computers used by FM to chat online with BARNER. Detective Strickland submitted the two laptop computers for forensic analysis. A preliminary review of the two computer hard drives shows numerous Yahoo! Instant Messenger chat conversations between FM and BARNER from late July 2007 to October 19, 2007.

7

28.    The Instant Messages show that BARNER used the ID jbintn9 to have Instant Messenger chats with FM in which he initially claimed to be a 17 year old male. In his communications with FM, BARNER passed himself off as a 17 year old by claiming that he had homework to do at night, helped his Mom out at the business, and was talking to his Dad about taking FM on the next missionary trip to South Africa in the summer of 2008.

29.    BARNER continued this until September 7, 2007, when he sent the email with attached word processing document. The document states in relevant part:

> This is one of the hardest things I've ever done and I don't know where to start so I guess I'll just say it. [FM], I have been deceiving you about who I am and I can't continue to do so. I feel so guilty and ashamed I can't stand myself. I'm not the age I told you, I'm older. How much older doesn't matter... but it's old enough to have known better and too old for a romantic relationship to ever have been possible between us.

. . .

> Anyway, I was slapped with reality after a couple of weeks when you proposed meeting. Like I told you, that was a very normal proposal. That's when I became so terribly torn and knew I had to end it. As you know, I kept trying but the problem was the 17 y/o in me had fallen hopelessly in love with you. I finally woke up when you asked about the prom. That broke my heart and made me realize this facade had to end.

30.    My review of the Instant Messenger chats demonstrates that BARNER knew that FM was 15 years' old. FM told BARNER her age in the following chat from September 2007:

> FM (9/5/2007 9:31:56 PM): i missed you
> J. B. (9/5/2007 9:32:03 PM): why?
> J. B. (9/5/2007 9:32:11 PM):
> FM (9/5/2007 9:32:15 PM): because i love you and spending time with you
> J. B. (9/5/2007 9:32:27 PM): yeah and them in a jerk to you
> J. B. (9/5/2007 9:32:29 PM):
> FM (9/5/2007 9:32:33 PM): no you arent
> J. B. (9/5/2007 9:32:33 PM): then*

8

FM (9/5/2007 9:32:42 PM):
FM (9/5/2007 9:32:55 PM): i have stupid things about me too dork
J. B. (9/5/2007 9:33:16 PM): well it was dumb...thanks for being u
FM (9/5/2007 9:33:24 PM): hm?
J. B. (9/5/2007 9:33:43 PM): you're just so mature for your age
FM (9/5/2007 9:34:03 PM): well I've just been through more that most 15 yos

31.     My review of the chats also demonstrates that BARNER engaged FM in explicit

sexual chat conversations. A chat from September 14, 2007 shows the following:

J. B. (9/14/2007 9:41:16 PM): u better not be
FM (9/14/2007 9:41:22 PM): be what?
J. B. (9/14/2007 9:41:32 PM): touching your pussy
J. B. (9/14/2007 9:41:36 PM): im serious
FM (9/14/2007 9:41:59 PM): im not
FM (9/14/2007 9:42:18 PM): damn freeze lol
J. B. (9/14/2007 9:42:24 PM): lol
FM (9/14/2007 9:42:41 PM): my gosh.
FM (9/14/2007 9:42:47 PM): i cant even type lol
J. B. (9/14/2007 9:43:08 PM): why?
FM (9/14/2007 9:43:19 PM): youre driving me crazy
FM (9/14/2007 9:43:37 PM): take
FM (9/14/2007 9:43:38 PM): it
FM (9/14/2007 9:43:39 PM): out
J. B. (9/14/2007 9:43:45 PM): sorry
J. B. (9/14/2007 9:43:49 PM): i cant
FM (9/14/2007 9:43:53 PM): yes you can
FM (9/14/2007 9:44:13 PM): please
FM (9/14/2007 9:44:27 PM): john...i need it please
J. B. (9/14/2007 9:44:41 PM): you need what
FM (9/14/2007 9:44:45 PM): your hard cock
FM (9/14/2007 9:45:41 PM): gosh.
FM (9/14/2007 9:45:45 PM): can i yet?
J. B. (9/14/2007 9:45:54 PM): no
FM (9/14/2007 9:45:56 PM): please
J. B. (9/14/2007 9:45:58 PM): i mean it
FM (9/14/2007 9:46:13 PM): can i do mic?
FM (9/14/2007 9:46:35 PM): wow...
FM (9/14/2007 9:47:04 PM): oh gosh
J. B. (9/14/2007 9:47:15 PM): you see that
FM (9/14/2007 9:47:17 PM): yes
J. B. (9/14/2007 9:47:22 PM): it needs licked off

9

FM (9/14/2007 9:47:30 PM): mic?
J. B. (9/14/2007 9:47:35 PM): ok
J. B. (9/14/2007 9:52:31 PM): let me do it

32.   The Instant Messenger chats also show that BARNER planned his trip to meet

FM, and intended to engage in sexually illicit conduct with FM when they met. On October 4,

2007, BARNER first discussed making travel plans, with a layover in Chicago, for the purpose

of meeting with FM. In the chat, BARNER states that they would have an hour but that he

would meet if they only had five minutes. The chat provides, in relevant part, as follows:

J. B. (10/4/2007 9:01:43 PM): anywhooo...
FM (10/4/2007 9:01:48 PM): hm?
J. B. (10/4/2007 9:02:30 PM): i can get a layover in chi from like 3:15 to
6:55pm
J. B. (10/4/2007 9:02:40 PM): it's 24 mins to NB
FM (10/4/2007 9:02:52 PM): if you know where youre going
FM (10/4/2007 9:03:15 PM): lol stupid internet
J. B. (10/4/2007 9:03:27 PM): J. B: so i could possibly have an hour
FM (10/4/2007 9:03:29 PM): soo...about an hour then?
J. B. (10/4/2007 9:03:42 PM): well honestly, I'd do it for 5 mins
FM (10/4/2007 9:03:47 PM): aw dork
J. B. (10/4/2007 9:03:51 PM):
J. B. (10/4/2007 9:03:53 PM): i would
J. B. (10/4/2007 9:03:59 PM): it means that much to me
FM (10/4/2007 9:04:01 PM): how would you get to nb?
J. B. (10/4/2007 9:04:28 PM): well theres this new thing...you can pay a
company to use a car

33.   On October 5, 2007, BARNER advised FM that he had made his travel plans:

J. B. (10/5/2007 11:49:52 PM): J. B: plus i have good news
FM (10/5/2007 11:49:55 PM): what?
J. B. (10/5/2007 11:50:07 PM): im coming on the 20th
. . .

J. B. (10/6/2007 12:00:32 AM): id get in at 319pm
J. B. (10/6/2007 12:00:42 AM): i already thought of that
J. B. (10/6/2007 12:00:52 AM): a cab would be better for a lot of reasons
J. B. (10/6/2007 12:00:59 AM): i could pay cash

10

J. B. (10/6/2007 12:01:12 AM): and way faster
J. B. (10/6/2007 12:01:22 AM): no picking up and dropping off a car

34.    On October 8, 2007, after BARNER made his plans to travel to Illinois to meet

FM, BARNER sent an Instant Message to FM.  In the chat, BARNER engaged FM in a

discussion of male genitalia.  The chart provides, in relevant part, that:

J. B. (10/8/2007 4:53:33 AM): when you say long, i get turned on lol
FM (10/8/2007 4:53:38 AM):
J. B. (10/8/2007 4:53:49 AM): i love when you talk about ...you know
FM (10/8/2007 4:53:57 AM): nope i don't know
J. B. (10/8/2007 4:53:59 AM): cock
FM (10/8/2007 4:54:12 AM): oh gosh dork
J. B. (10/8/2007 4:54:20 AM): im so cereal dork
FM (10/8/2007 4:54:29 AM): change the subject?
J. B. (10/8/2007 4:54:42 AM): nope...i love loving that you love cock lol
J. B. (10/8/2007 4:54:50 AM): and that you let me share that yoy do
J. B. (10/8/2007 4:54:57 AM): you*
FM (10/8/2007 4:55:00 AM): dork you have to change the subject
J. B. (10/8/2007 4:55:13 AM): sorry i just wanted to tell you that
J. B. (10/8/2007 4:55:17 AM): I've been wanting to
FM (10/8/2007 4:55:22 AM): aw
FM (10/8/2007 4:55:25 AM): well thats okay
J. B. (10/8/2007 4:55:41 AM): its so sexually powerful that we share that you love
it
J. B. (10/8/2007 4:55:49 AM): gosh...that makes me hot lol

35.    In a chat conducted on October 17, 2007, BARNER described how he envisioned

his meeting FM at the park.  In the chat, BARNER states he wanted to show his love for FM by

taking a "nice fall walk in the woods . . . kissing really softly while we sit on a bench" and

running his hands up the inside of FM's thighs.  The chat provides, in relevant parts, as follows:

J. B. (10/17/2007 9:49:00 PM): i was thinking today... you'd look really nice in
kind of a long flowing cotton skirt.. you know, the banded waist kind
FM (10/17/2007 9:49:10 PM): random?
J. B. (10/17/2007 9:49:22 PM): not really lol
FM (10/17/2007 9:49:28 PM): mhm
FM (10/17/2007 9:49:30 PM): dork

11

FM (10/17/2007 9:49:31 PM): lol
J. B. (10/17/2007 9:49:35 PM): lol
J. B. (10/17/2007 9:49:39 PM): took a sec
FM (10/17/2007 9:49:50 PM): shush
J. B. (10/17/2007 9:50:01 PM):
J. B. (10/17/2007 9:50:23 PM): you know, nice skirt for a nice fall walk in the woods
FM (10/17/2007 9:50:27 PM): oh of course
J. B. (10/17/2007 9:50:48 PM):
FM (10/17/2007 9:51:00 PM): gosh lol
J. B. (10/17/2007 9:51:05 PM): hm?
FM (10/17/2007 9:51:09 PM): just that
J. B. (10/17/2007 9:51:24 PM): dork...no freaking ok?
J. B. (10/17/2007 9:51:27 PM): but...
FM (10/17/2007 9:51:33 PM): hm?
J. B. (10/17/2007 9:51:38 PM): lol nvm
FM (10/17/2007 9:51:42 PM): nooooo
J. B. (10/17/2007 9:51:45 PM): later
FM (10/17/2007 9:51:55 PM): no
FM (10/17/2007 9:51:56 PM): now
J. B. (10/17/2007 9:52:03 PM): i keep imagining...
J. B. (10/17/2007 9:52:15 PM): us kissing really softly while we sit on a bench...
J. B. (10/17/2007 9:52:30 PM): and my hands running up the inside of your thighs
FM (10/17/2007 9:52:46 PM):
J. B. (10/17/2007 9:52:49 PM):
J. B. (10/17/2007 9:53:03 PM): kissing your neck...
FM (10/17/2007 9:53:15 PM): dork you know you cant do that
J. B. (10/17/2007 9:53:26 PM): ok ill be sure not to
FM (10/17/2007 9:53:29 PM): lol
FM (10/17/2007 9:53:33 PM): you better not
J. B. (10/17/2007 9:53:52 PM): i better not not?
FM (10/17/2007 9:53:56 PM): lol
FM (10/17/2007 9:53:56 PM): sure
FM (10/17/2007 9:53:57 PM): lol
J. B. (10/17/2007 9:54:05 PM): ok, thats a deal
J. B. (10/17/2007 9:54:10 PM):
FM (10/17/2007 9:54:11 PM):
J. B. (10/17/2007 9:54:36 PM): sorry dork but i love you...and i want to show you

36.     On October 19, 2007, the evening before he traveled from Nashville, Tennessee to

Northbrook, Illinois, FM had an Instant Message chat with FM. The chat included references to

sexually illicit conduct that BARNER intended to engage in upon his arrival in Illinois.

12

BARNER and FM discussed, among other things, "getting hard" and placing "it" in FM's mouth

or "in" FM. The chat provides, in relevant part, as follows:

J. B. (10/19/2007 8:17:45 PM): i need to calm down
FM (10/19/2007 8:17:52 PM): nope
FM (10/19/2007 8:18:11 PM): getting hard?
J. B. (10/19/2007 8:18:16 PM): dork!
FM (10/19/2007 8:18:23 PM):
FM (10/19/2007 8:18:39 PM): yes or no question my dear
J. B. (10/19/2007 8:18:55 PM): yes-ish lol
FM (10/19/2007 8:19:14 PM): ill get it all the way for you
J. B. (10/19/2007 8:19:27 PM): dork seriously
FM (10/19/2007 8:19:39 PM): oh gosh no it would be so amazing to feel it get
hard in my mouth
J. B. (10/19/2007 8:19:49 PM):
FM (10/19/2007 8:19:54 PM): hm?
J. B. (10/19/2007 8:19:59 PM): stop
FM (10/19/2007 8:20:04 PM): i don't want to
FM (10/19/2007 8:20:18 PM): i want you in me
J. B. (10/19/2007 8:20:25 PM): dang dork
FM (10/19/2007 8:20:31 PM): just looking in your eyes...
J. B. (10/19/2007 8:20:33 PM): seriously, thats strong
FM (10/19/2007 8:20:35 PM): gosh.
J. B. (10/19/2007 8:20:47 PM): that goes beyond sexual dork
FM (10/19/2007 8:20:53 PM): just a little
J. B. (10/19/2007 8:21:43 PM): wow ok
FM (10/19/2007 8:21:47 PM): hm?
J. B. (10/19/2007 8:21:56 PM): just re-reading
FM (10/19/2007 8:22:00 PM): oh lol dork
J. B. (10/19/2007 8:22:31 PM):
FM (10/19/2007 8:22:35 PM):
FM (10/19/2007 8:22:37 PM): long
FM (10/19/2007 8:22:39 PM): soft
J. B. (10/19/2007 8:22:42 PM): awww
J. B. (10/19/2007 8:22:46 PM):
FM (10/19/2007 8:23:13 PM): my dork

13

## CONCLUSION

37.     Based on the foregoing, I respectfully submit that there is probable cause to believe that on or about October 20, 2007 JOHN BARNER did travel in interstate commerce from the state of Tennessee to the state of Illinois for the purpose of engaging in illicit sexual conduct as defined in Title 18, United States Code, Section 2423(f), in violation of Title 18, United States Code, Section 2423(b).

FURTHER AFFIANT SAYETH NOT.


LARY S. MAXWELL
Postal Inspector
U.S. Postal Inspection Service


Subscribed and sworn to before me this 31st day of January, 2007.


HONORABLE MORTON DENLOW
UNITED STATES MAGISTRATE JUDGE


14